# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============
## NO. 03-00-00738-CV
===============

**Fred Rogers, Appellant**

**v.**

**Texas State Board of Public Accountancy, Appellee**

======================================================================
## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
## NO. 99-14250, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING
======================================================================

Fred Rogers appeals the district court's judgment affirming the suspension of his public accountant's license for two years. We will affirm the trial court's judgment.

## BACKGROUND

In January 1998, the Texas State Board of Public Accountancy ("the Board") instituted disciplinary proceedings against Rogers. The disciplinary proceedings were based on the following allegations: (1) failure to conform to industry and governmental standards in the preparation and issuance of audited financial statements; (2) failure to make the working papers for

those statements available to clients; (3) failure to comply with an Agreed Consent Order previously entered into with the Board in lieu of disciplinary proceedings;[1] and (4) failure to provide the Board's Technical Standards Review Committee ("TSRC") with certain required documents.

On March 17, 1999, an administrative law judge ("ALJ") for the State Office of Administrative Hearings ("SOAH") submitted a Proposal for Decision recommending suspension of Rogers's certified public accountant's license for two years. The Board adopted the ALJ's decision and overruled Rogers's motion for rehearing. The district court affirmed the Board's decision.

### STANDARD OF REVIEW

A court may reverse the agency's decision only if the substantial rights of the appellant have been prejudiced because the agency has committed one of the errors listed in section 2001.174(2)(A)-(F). The list includes the substantial evidence, abuse of discretion, and arbitrary and capricious tests. *See* Tex. Gov't Code Ann. §§ 2001.174(2)(E), (F) (West 1998).

In conducting a substantial evidence review, we must first determine whether the evidence as a whole is such that reasonable minds could have reached the conclusion the agency must have reached in order to take the disputed action. *See Texas State Bd. of Dental Exam'rs v. Sizemore*, 759 S.W.2d 114, 116 (Tex. 1988); *Dotson v. Texas State Bd. of Medical Exam'rs*, 612 S.W.2d 921, 922 (Tex. 1981). The test is not whether the agency made the correct conclusion, but whether some reasonable basis exists in the record for the agency's action. *See Texas Health Facilities Comm'n v. Charter Medical-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984). We may not

---

[1] The Board had compiled six other investigative/enforcement files against Rogers.

substitute our judgment for that of the agency as to the weight of the evidence. *Public Util. Comm'n v. Gulf States Util. Co.*, 809 S.W.2d 201, 211 (Tex. 1991). Decisions of an administrative agency are presumed to be supported by substantial evidence, and the appealing party bears the burden of showing a lack of substantial evidence. *Charter Medical-Dallas, Inc.*, 665 S.W.2d at 453. The appealing party cannot meet this burden merely by showing that the evidence preponderates against the agency decision. *Id.* at 452. If substantial evidence would support either affirmative or negative findings, the reviewing court must uphold the order, resolving any conflicts in favor of the agency's decision. *Id.* at 453.

## DISCUSSION

### *Jurisdiction*

Rogers's first issue on appeal questions whether SOAH had jurisdiction to hear the complaint against him. Rogers claims SOAH had no jurisdiction because the Board failed to follow the proper procedure for initiating disciplinary proceedings. The applicable statute provides as follows:

> The board may initiate disciplinary proceedings under this Act either on its own motion or on the complaint of any person . . . . The board shall adopt procedures by which a decision to suspend or revoke a license is made by or appealable to the board.

3

Tex. Rev. Civ. Stat. Ann. art. 41a-1, § 22(b) ("Public Accountancy Act").[2] Following investigative activities by the Board staff and the TSRC, the Board's executive director signed the complaint against Rogers; Rogers argues that only the Board as a whole had the statutory authority to initiate such proceedings. He concludes that because "[n]owhere in this statute is there authority for . . . the executive director to initiate [disciplinary proceedings]," SOAH had no jurisdiction to conduct the hearing that resulted in the suspension of his license.

In his brief, Rogers relies upon a Texas Supreme Court case as support for his contention that the Board was required to comply strictly with the procedure outlined in section 22(b):

> The Legislature has said what shall be done in the situation and impliedly said what shall not be done. Noncompliance with the mandatory statutory procedures cannot be excused by blandly contending that no one was actually hurt by the law violation.

*Texas Highway Comm'n v. Texas Ass'n of Steel Imps., Inc.*, 372 S.W.2d 525, 529 (Tex. 1963). Accordingly, appellant challenges "whether the proceeding ought to have been brought at all in the absence of formal Board action initiating it."

The fundamental rule in statutory construction is to determine and give effect to the legislature's intent. *Texas Dep't of Pub. Safety v. Dear*, 999 S.W.2d 148, 152 (Tex. App.—Austin 1999, no pet.). Here, the legislature's intent is clearly stated:

---

[2] The provisions cited in this opinion are those in effect at the time of the events giving rise to this case. *See* Texas Public Accountancy Act of 1991, 72d Leg., R.S., ch. 533, § 24, 1991 Tex. Gen. Laws 1817, 1836 (Tex. Rev. Civ. Stat. Ann. art. 41a-1, § 22(b), *since codified at* Tex. Occ. Code Ann. § 901.001 (West 2000) .

4

> It is the policy of this state and the purpose of this Act . . . that persons professing to practice public accountancy be qualified to do so . . . and that the activities and competitive practices of those practicing public accountancy be regulated to be free of commercial exploitation toward the end that the public will be provided with a high level of professional competence at reasonable fees by independent, qualified persons.

Public Accountancy Act art. 41a-1, § 1. The legislature's intent of protecting the public from incompetent and unqualified accountancy is served by allowing the Board's executive director to sign an initiating complaint rather than requiring the Board as a whole to do so. As this Court has held, "if the act is performed, but not in the time or in the precise mode indicated, it will still be sufficient, if that which is done accomplishes the substantial purpose of the statute." *Dear*, 999 S.W.2d at 152 (citing *State v. Fox*, 133 S.W.2d 987, 991 (Tex. Civ. App.—Austin 1939, writ ref'd)). We hold the Board's executive director's signature on the initiating complaint does not deprive SOAH of jurisdiction over Rogers's hearing. *Id*.

The language of the Act expressly allows the Board to initiate proceedings "either on its own motion or on the complaint of any person." Public Accountancy Act art. 41a-1, § 22(b). Clearly, the executive director is "any person"; therefore, the fact that the executive director signed the initiating complaint did not deprive SOAH of jurisdiction over Rogers's hearing.

Furthermore, the executive director's signature on the initiating complaint does not deprive SOAH of jurisdiction because the executive director acted on the Board's behalf. It is well-settled in Texas that the complexity of regulatory enforcement requires that an administrative agency retain broad discretion in carrying out its statutory functions. *State v. Malone Serv. Co.*, 829 S.W.2d 763, 767 (Tex. 1992). Because the Board's practice of initially processing disciplinary complaints through its executive director is not "plainly erroneous or inconsistent with the regulation," SOAH

5

was not deprived of jurisdiction over Rogers's hearing. *Texas Dep't of Pub. Safety v. Zhao*, 994 S.W.2d 357, 361 (Tex. App.—Austin 1999, no pet.). Accordingly, we overrule Rogers's first issue.[3]

### Expert Witness Skrabanek

Rogers's second issue inquires whether the ALJ abused her discretion in admitting into evidence and relying on the expert testimony and report of Kenneth Skrabanek. Rogers claims that Skrabanek was not qualified to give opinion evidence in the field of governmental auditing standards and lacked a sufficient foundation for his opinions, and thus his testimony should have been excluded. Therefore, Rogers concludes, there was no evidence to sustain a number of the ALJ's findings of fact, and the trial court erred in affirming the Board's final order.

An ALJ has broad discretion in determining whether to admit or exclude expert testimony in an administrative hearing. *Fay-Ray Corp. v. Texas Alcoholic Beverage Comm'n*, 959 S.W.2d 362, 367 (Tex. App.—Austin 1998, no pet.). "Expert opinion testimony should be admitted when it will assist the trier of fact in understanding the evidence or determining a fact issue." *Id.* An ALJ's decision on the issue of expert testimony will not be disturbed absent an abuse of discretion. *Id.*

---

[3] As a practical matter, the Board's procedure of initiating proceedings through its representatives preserves the objectivity of those members of the Board who will ultimately resolve those complaints. It is difficult to imagine how the entire Board could initiate disciplinary proceedings without prejudging the issues of the complaint to some extent. Further, requiring the entire Board to initiate proceedings could violate Section 2001.061 of the Texas Government Code which prohibits ex parte consultations. Tex. Gov't Code Ann. § 2001.061 (West 2000) (prohibiting "a member or employee of a state agency assigned to render a decision . . . in a contested case" from "directly or indirectly communicat[ing] in connection with an issue of fact or law with a state agency, person, party, or representative of those entities").

Rogers argues Skrabanek's testimony does not satisfy the standard for admission because Skrabanek does not have sufficient knowledge in the "sub-speciality" of governmental audits. The record clearly demonstrates that the ALJ qualified Skrabanek as an expert after voir dire on this specific issue. Skrabanek testified that he had thirty years of auditing experience, had examined over fifty audits of governmental and non-profit entities for compliance with professional standards, and had taken governmental audit courses. Because we find no abuse of discretion in qualifying Skrabanek as an expert, we overrule Rogers's second issue.

### *Expert Witnesses McDuffy and King*

Rogers's third issue contends the ALJ abused her discretion in excluding the expert testimony of Rogers's witnesses Alonzo McDuffy and Jerald King. The record reflects that the ALJ excluded McDuffy's testimony because of his failure to cooperate with either party. In his deposition, McDuffy refused to answer any questions from either Rogers or the Board,[4] and the ALJ accordingly excluded his testimony at the hearing.

Similarly, the ALJ found that King had ample notice of his designation as an expert witness and yet failed to review or form an opinion on Rogers's audit reports at the time of his deposition. The ALJ reasoned that, in refusing to answer deposition questions, McDuffy and King in effect refused to comply with discovery. Therefore, the ALJ concluded their testimony should be

---

[4] The administrative hearing transcript reveals that McDuffy refused to respond or make himself available to Rogers. His deposition responses included "I can't respond to this. I can't give you this." At his deposition, McDuffy identified himself as an auditor for the Department of Human Services and explained he had been instructed by his employer not to answer questions regarding Rogers's work.

excluded at the hearing. *Melendez v. State*, 902 S.W.2d 132, 135 (Tex. App.—Houston [1st Dist.] 1995, no writ) (holding that evidence should be excluded if proffering party has failed to comply with discovery). Because the ALJ did not act without reference to any guiding rules or principles in excluding the expert testimony of McDuffy and King, the trial court did not err in affirming the Board's order. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Accordingly, Rogers's third issue is overruled.

## "*Discreditable Act*"

The next issue Rogers raises concerns whether violation of a consent order constitutes a "discreditable act" under Board Rule 501.41. Rogers's commission of a "discreditable act" serves as a partial basis for his license suspension. Section 501.41 of the Texas Administrative Code is the controlling provision for discreditable acts:

> A certificate or registration holder shall not commit any act that reflects adversely on his fitness to engage in the practice of public accountancy. A discreditable act *includes but is not limited to* [various enumerated infractions].

22 Tex. Admin. Code § 501.41 (1999) (Texas State Bd. of Pub. Accountancy, Professional Conduct) (emphasis added). Although Rule 501.41 has been amended and now specifies violation of a consent order as a discreditable act, it was not included at the time of Rogers's hearing before SOAH. Rogers therefore contends the trial court erred in affirming the Board's final order to suspend his license because he had not committed a "discreditable act."

An agency's interpretation of its own rules is generally entitled to deference on judicial review. *Zhao*, 994 S.W.2d at 360-61. As this Court has stated: "The reviewing court is limited to determining whether the administrative interpretation is 'plainly erroneous or inconsistent with the

8

regulations.'" *Id.* (citing *Gulf States Utils. Co.*, 809 S.W.2d at 207). The phrase "includes but is not limited to" clearly reflects that the enumerated list of infractions in section 501.41 is not intended to be exclusive. Therefore, the Board's interpretation of "discreditable acts" to include violation of a consent order is not plainly erroneous, and the trial court did not err in affirming the Board's final order. Accordingly, Rogers's fourth issue is overruled.

### "*Issued Audited Financial Statements*"

Rogers's next issue challenges whether the trial court should have affirmed the Board's final order because it was based on the ALJ's findings that Rogers "issued audited financial statements." Rogers claims there is no evidence to support this finding because "issuance of statements is the responsibility of management," and Rogers only "rendered a report based on his examination of the statements."

In reviewing the form of an administrative board's findings of fact, "this [C]ourt has 'neither the right nor the authority to lay out a precise form of findings to be made.'" *State Banking Bd. v. Allied Bank Marble Falls*, 748 S.W.2d 447, 448 (Tex. 1988). The Texas Government Code prescribes the correct form for findings of fact: "Findings of fact, if set forth in statutory language, must be accompanied by a concise and explicit statement of the underlying facts supporting the findings." Tex. Gov't Code Ann. § 2001.141(d) (West 2000). In construing the predecessor to section 2001.141, the Texas Supreme Court held that a board's findings of fact are sufficient if they:

(1) indicate[] that the Board fully considered all of the evidence and facts;

(2) inform[] the [appellant] so that [he or she can] intelligently prepare and present an appeal; and

(3) assist[] th[e] court in properly exercising its function of reviewing the order.

9

*Allied Bank Marble Falls*, 748 S.W.2d at 449.[5] The ALJ's proposal for decision acknowledges Rogers's contention that the accounting firm of Kolheim, Rogers and Taylor prepared and were responsible for the audited financial statements and audit reports at issue. In response, the ALJ clarifies that the statements and reports "were all prepared by [Rogers], so responsibility for the contents of those reports and statements rests with [Rogers]." This statement clearly specifies that findings of fact seven through ten serve as the basis for Rogers's *responsibility* for the audited financial statements enumerated therein, whether or not he technically "issued" them. Because findings of fact seven through ten are not rendered insufficient by the use of the word "issued," we overrule Rogers's fifth issue.

### Issues Six, Seven, and Eight

Rogers asserts additional complaints in his sixth, seventh, and eighth issues, but he failed to raise them in his motion for rehearing. Rogers's sixth issue raises a no-evidence challenge to Conclusion of Law Number Five, which determined Rogers violated Board Rule 501.21 "by failing to exercise due professional competence." In Rogers's seventh issue, he challenges the ALJ's Conclusion of Law Number Six, and, because he alleges they are interdependent, Rogers also

---

[5] Texas Revised Civil Statute article 6252-13a, section 16(b) states:

"Findings of fact, if set forth in statutory language, must be accompanied by a concise and explicit statement of the underlying facts supporting the findings . . . ."

Act of Sept. 1, 1989, 71st Leg., R.S., ch. 362, 1989 Tex. Gen. Laws 1448, *amended by* Act of Sept. 1, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 747.

challenges Conclusion of Law Number Seven. In his eighth and final issue, Rogers challenges Conclusions of Law Numbers Nine, Ten, and Eleven.

To preserve these issues, Rogers was required to file a motion for rehearing describing the error asserted. Tex. Gov't Code Ann. § 2001.145-46 (West 2000); *Burke v. Central Educ. Agency*, 725 S.W.2d 393, 396 (Tex. App.—Austin 1987, writ denied). The motion for rehearing must be "sufficiently definite to apprise the regulatory agency of the error claimed and to allow the agency to correct the error or to prepare to defend it." *Suburban Util. Corp. v. Public Util. Comm'n*, 652 S.W.2d 358, 365 (Tex. 1983). Because Rogers failed to raise issues six, seven, and eight with sufficient definiteness in his motion for rehearing, we overrule all three.

**CONCLUSION**

We overrule all of Rogers's complaints on appeal and affirm the judgment of the district court.

_____

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed: November 1, 2001

Do Not Publish

11